IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENA LOHR ELBLING, ) | |
|       Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-339 |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
|       Defendant. ) | |

REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the plaintiff's for summary judgment (Docket No. 7) be denied; that the defendant's motion for summary judgment (Docket No. 12)be granted and that the determination of the Commissioner be affirmed.

II. Report

Presently before the Court for disposition are cross motions for summary judgment.

On March 16, 2007, Dena Lohr Elbling by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

The instant application for Supplemental Security Income Benefits was filed on April 5, 2004 (R. 93-96). On June 1, 2004, benefits were denied (R.78-82), and on June 10, 2004, the plaintiff requested a hearing (R.83). Pursuant to that request a hearing was held on

January 26, 2006 (R.34-75).  In a decision filed on March 8, 2006, an Administrative Law Judge denied benefits (R.10-19), and the plaintiff requested reconsideration of that determination.  On January 12, 2007, the Appeals Council affirmed the prior determination (R.5-8).  The instant complaint was filed on March 16, 2007.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act.  Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or
> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.  The findings
> of the Commissioner of Social Security as to any fact, if supported
> by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994).  To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

> As set forth in 20 C.F.R. § 416.905(a) disability is defined as:
>
> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> In addition, a person will be considered disabled if he/she is
>
> (a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and (c) ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

> A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:
>
> impairment [which] result[s] from anatomical, physiological, or psychological abnormalities which [are demonstrated] by medically acceptable clinical and laboratory diagnostic techniques.
>
> For purposes of determining whether or not the plaintiff met the eligibility

requirements, certain evidence was considered by the Commissioner.

At the hearing held on January 26, 2006 (R.34-75), the plaintiff appeared with counsel (R.36) and testified that she was nineteen years old (R.42); that she graduated from high school and attended community college on a part-time basis (R.42, 52) and that she never worked (R.52).

The plaintiff also testified that she suffers from an obsessive-compulsive disorder, Ausberger's syndrome and ADD (R.53-54); that she has been in treatment for two years (R.54); that she naps for five hours in the afternoon (R.56-57); that she can attend to her own personal

needs but does not perform any household chores (R.57, 59) and that she can lift thirty pounds (R.60).

The plaintiff's father testified that he prepares the plaintiff's meals and does her laundry (R.64) and that the plaintiff does not have a normal sleep pattern (R.65).

The plaintiff's mother testified that she is very sensitive to lights, smells and sounds (R.67).

In addition a vocational expert was called upon to testify (R.68-75). The witness was asked to assume an individual of the plaintiff's age and educational background who could perform light exertional work and he responded that such an individual could be gainfully employed (R.70-72). However, he also added that if the individual missed three days of work a week or was repeatedly tardy, she would not be employable (R.73). Additionally, the witness testified that she would not be employable if she required a job coach (R.74).

In addition, certain other evidence was considered.

The plaintiff was treated at East Side Pediatrics between March 4, 2003 and January 6, 2004. She was diagnosed as having ADHD, obsessive-compulsive disorder and depression. Medication was prescribed (R.185-188).

In a psychiatric review completed on May 19, 2004, Sanford Golin, Ph.D. diagnosed an organic mental disorder marked by ADHD, an affective disorder marked by depression and an anxiety-related disorder marked by obsessive/compulsive behavior. The functional limitations ranged from none to moderate with inadequate evidence of meeting the "C" requirements of the regulations. He concluded that the "limitations resulting from the

impairment do not preclude the claimant from meeting the basic mental demands of competitive work on a sustained basis." (R189-206).

The plaintiff attended the Pittsburgh High School for the Creative and Performing Arts from August 28, 2001 and graduated on June 15, 2004 near the bottom of her class. She was able to function at or above grade level with some special educational modifications. Her I.Q. was determined to be 123. However, she was also determined to be extremely emotional (R.145-184).

The plaintiff was treated at the Western Psychiatric Hospital between February 9, 1998 and June 10, 2005 for anxiety. Weekly therapy was provided. Ausberger's disorder, an adjustment disorder, ADHD, obsessive compulsive disorder and mood disorder were diagnosed (R.207-337).

In a report of a residual mental functional capacity completed on January 18, 2006, it was noted that the plaintiff would require mobility assistance, and would benefit from a job coach (R.354-358).

In an affidavit executed on February 1, 2006, the plaintiff stated that she had difficulty interacting with others and relied on her father to meet her daily needs (R.141-142).

In an affidavit dated February 1, 2006, the plaintiff's mother stated that the plaintiff was unable to meet her own needs, did not interact with other persons and that she was unable to cope with simple expectations (R.141-142).

In an affidavit executed on February 2, 2006, the plaintiff's father reported that although she is bright, the plaintiff rarely leaves the house; that she attends school, that she does

5

not interact with others; that she can follow directions and orders and that she is emotionally fragile (R.138-140).

The plaintiff was treated at Western Psychiatric Institute and Clinic between June 13, 2005 and February 6, 2006 for anxiety. Weekly therapy was provided (R.338-353, 359-383).

Based on the evidence presented, the Commissioner determined:

> [T]he record ... indicates that the claimant has exhibited no more than a mild restriction of activities of daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence and pace. Moreover, there is no evidence of any episodes of decompensation of extended duration, or a severe mental impairment lasting for two or more years with signs and symptoms continuing despite medication or psychosocial support so as to satisfy the "B" or "C"criteria requirements for mental disorders in Appendix 1.
>
> Upon careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work not requiring fine manipulation; standing/walking no more than a total of six hours in an eight-hour workday; sitting no more than eight hours in an eight-hour workday; allowing her to avoid exposure to odors, temperature extremes, work in close proximity or contact with co-workers and supervisors and decision-making.
>
> * * *
>
> The claimant attended regular high school classes and worked at grade level. She was able to graduate, attended business school for a period, and is currently enrolled in community college courses. There is no documentation that the claimant has ever required hospitalization for any condition, and outpatient treatment records from the Western Psychiatric Institute and Clinic at the University of Pittsburgh Medical Center do not establish the existence of any impairment of the severity to preclude the performance of a wide range of work. By May 2004, the claimant had been diagnosed with depressive disorder, obsessive-compulsive disorder, Ausberger's disorder, and attention deficit hyperactivity disorder by history, but she described here mood as "pretty good" and affect was "bright" throughout her evaluation. She denied thoughts of

suicide, cognitive and intellectual functioning were within normal limits, and judgment and insight were considered fair. Global functioning was assessed at 60, consistent with no more than mild to moderate symptoms and functional limitations.

Subsequent outpatient treatment records from Western Psychiatric Institute and Clinic consistently continued to note global functioning assessments in the 60's, and generally negative findings on mental status examination. In December 2004, it was stated that the claimant reported that "things have been going really well overall." She was in a good mood and happy "a lot of the time." Sleep, energy, appetite and concentration "are all good." She denied feeling depressed.

While Ms. Elbling's mental status fluctuated somewhat in response to situational stressors in her life, by April 2005, she was considering taking college courses, and had friends, including a boyfriend. In July 2005, Ms. Elbling reported that "she feels fine." The claimant was working to improve her communication and interpersonal relationship skills. She denied side effects from her medication... Again, findings on mental status examination were unremarkable...

Although Ms. Elbling denied any significant physical problems at the hearing, she testified that she is five feet, six inches tall, and weighs 260 pounds. The Administrative Law Judge has considered the claimant's obesity as required ... in limiting her to the exertional demands of light work, and establishing the other limitations...

Ms. Elbling has never attempted to work, and while she appears to rely to a great extent upon her parents, and by her own admission helps little around the home, this appears to be a lifestyle choice on the claimant's part, rather than a necessary consequence of any mental condition.

* * *

The claimant has not been under a "disability" as defined in the Social Security Act ...[and] is not eligible for supplemental security income [benefits] (R.15-19).

The record reveals that while the plaintiff has several psychological problems, none of them individually or in combination meet the listings requirements necessary to establish a disability. Rather, as the Administrative Law Judge suggests, the plaintiff has elected a lifestyle which permits her to do very little for herself although there is little to suggest that she is not capable of doing more. Additionally, other than her weight problem, there appears to be little evidence to suggest that the plaintiff suffers from any physical disability, and with certain reduced work related demands, the evidence demonstrates that she could be gainfully employed. For this reason, the conclusion of the Commissioner is supported by substantial evidence.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. Wiener v. Calio, 361 F.3d 206 (3d Cir.2004). In the instant case there are no material issues of fact in dispute, and the findings of the Commissioner are supported by substantial evidence. For this reason, it is recommended that the plaintiff's motion for summary judgment be denied; that the defendant's motion for summary judgment be granted and that the decision of the Commissioner be affirmed.

Within thirteen days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                                Respectfully submitted,

Dated: September 12, 2007                    s/ROBERT C. MITCHELL,
                                                United States Magistrate Judge